767 So.2d 443 (2000)
Raymond O. DIXON, Petitioner, Cross-Respondent,
v.
GAB BUSINESS SERVICES, INC. and Bio Lab Inc., Respondents, Cross-Petitioners.
No. SC96239.
Supreme Court of Florida.
August 24, 2000.
D. Paul McCaskill, Orlando, Florida; and Monte R. Shoemaker, Altamonte Springs, Florida, for Petitioner, Cross-Respondent.
Mathew D. Staver of Staver & Associates, Longwood, Florida, for Respondents, Cross-Petitioners.
Randy D. Ellison, West Palm Beach, Florida, for Academy of Florida Trial Lawyers and Florida Workers' Advocates.
WELLS, C.J.
We have for review a decision on the following question certified to be of great public importance:
WHETHER THE HOLDING IN ESCAMBIA COUNTY SHERIFF'S DEPARTMENT v. GRICE, 692 So.2d 896 (Fla.1997), CAPPING TOTAL BENEFITS RECEIVED BY A WORKER AT 100 PERCENT OF HIS OR HER AVERAGE WEEKLY WAGE, APPLIES WHEN SOCIAL SECURITY DISABILITY IS ONE OF THE BENEFITS RECEIVED BY THE WORKER, AND 80 PERCENT OF HIS OR HER AVERAGE CURRENT EARNINGS, AS COMPUTED BY THE SOCIAL SECURITY ADMINISTRATION, ARE *444 GREATER THAN HIS OR HER AVERAGE WEEKLY WAGE.
Gab Business Services, Inc. v. Dixon, 739 So.2d 637, 641 (Fla. 1st DCA 1999). We have jurisdiction. See Art. V, § 3(b)(4), Fla. Const. For the reasons stated herein, we answer the certified question in the negative and quash the decision of the district court.
Petitioner Raymond O. Dixon retired as a police officer and began working for Bio Lab, Inc., as a sales representative. He was injured in automobile accident on March 28, 1994, during the scope of his employment. For purposes of workers' compensation, Dixon was accepted as permanently and totally disabled as of June 8, 1995. Dixon's average weekly wage (AWW) as determined by workers' compensation at the time of the accident was $260 per week, and the corresponding compensation rate was $173.33. The monthly rates for both were $1,118 and $745.32, respectively. In addition to receiving workers' compensation benefits from respondents Bio Lab and GAB Business Services, Inc. (the employer/carrier), Dixon was paid $100 per month from a group disability policy, as well as $424.58 per month in social security disability (SSD) benefits. The total of these three benefits is $1,269.90.
The employer/carrier sought to offset Dixon's workers' compensation benefits by $151.90 per month, the amount that the three benefits exceeded his $1,118 monthly AWW. Dixon argued that section 440.15(10), Florida Statutes (Supp.1994), prevents an employer/carrier from reducing a claimant's benefits beyond 80 percent of his or her average current earnings (ACE) and that, because this amount of $1,666.40 was more than the total amount of benefits Dixon was receiving, the statute prevented any offset. The judge of compensation claims agreed with Dixon and denied the offset, determining that the cap on benefits should be based on a claimant's ACE.
On appeal, the First District reversed. Gab Business Services, 739 So.2d at 640. The First District found that our holding in Grice prevented an injured worker from receiving more than 100 percent of his or her AWW. Id. at 639. The First District recognized, however, that Grice did not involve this situation, in which a claimant's ACE exceeded his AWW and posed the certified question for our consideration. Id. at 641.
In Grice the employer/carrier sought to reduce a claimant's workers' compensation benefits to the extent that his combined workers' compensation, SSD, and state disability retirement benefits exceeded his AWW. This Court found that section 440.20(15), Florida Statutes (1985), authorized such a reduction. That section provided:
When an employee is injured and the employer pays his full wages or any part thereof during the period of disability, or pays medical expenses for such employee, and the case is contested by the carrier or the carrier and employer and thereafter the carrier, either voluntarily or pursuant to an award, makes a payment of compensation or medical benefits, the employer shall be entitled to reimbursement to the extent of the compensation paid or awarded, plus medical benefits, if any, out of the first proceeds paid by the carrier in compliance with such voluntary payment or award, provided the employer furnishes satisfactory proof to the judge of such payment of compensation and medical benefits. Any payment by the employer over and above compensation paid or awarded and medical benefits, pursuant to subsection (14), shall be considered a gratuity.
§ 440.20(15), Fla. Stat. (1985). Because the claimant's ACE did not exceed his AWW, the limits of section 440.15(10) were not an issue. It was in that context that this Court interpreted section 440.20(15) to mean that "an injured worker, except where expressly given such a right by *445 contract, may not receive benefits from his employer and other collateral sources which, when totalled, exceed 100% of [a claimant's] average weekly wage." Escambia County Sheriff's Dept. v. Grice, 692 So.2d at 898.
Respondents argue that our decision in Grice is controlling and that it allows an employer/carrier to take an offset or reduce its payments of workers' compensation benefits up to the amount that a claimant's combined benefits exceed 100 percent of his or her AWW, irrespective of the claimant's ACE. We disagree.
As stated, Grice did not involve a situation in which a claimant's ACE exceeded his AWW. Therefore, this Court did not discuss the restrictions imposed by section 440.15(10)(a). That section provides:
Weekly compensation benefits payable under this chapter for disability resulting from injuries to an employee who becomes eligible for benefits under 42 U.S.C. s. 423 shall be reduced to an amount whereby the sum of such compensation benefits payable under this chapter and such total benefits otherwise payable for such period to the employee and her or his dependents, had such employee not been entitled to benefits under this chapter, under 42 U.S.C. ss. 402 and 423, does not exceed 80 percent of the employee's average weekly wage. However, this provision shall not operate to reduce an injured worker's benefits under this chapter to a greater extent than such benefits would have otherwise been reduced under 42 U.S.C. s. 424(a).
§ 440.15(10)(a), Fla. Stat. (1999). While this section permits an employer/carrier to offset workers' compensation payments to claimants by the amount of any social security disability benefits the claimant is receiving, the offset cannot be taken such that it decreases a claimant's total benefits below 80 percent of the claimant's AWW or 80 percent of the claimant's ACE, whichever amount is greater. See 42 U.S.C. § 424a (1995); American Bankers Ins. Co. v. Little, 393 So.2d 1063, 1064 (Fla.1980).
By extending our decision in Grice to those situations in which a claimant's ACE exceeds his or her AWW, this Court would vitiate the express limits set forth in section 440.15(10)(a). As this Court noted in City of Clearwater v. Acker, 755 So.2d 597 (Fla.1999), our interpretation of section 440.20(15) to mean that a claimant may not receive in excess of 100 percent of his or her AWW was a judicial interpretation of an ambiguous statute and should not be extended to render another statute meaningless. This Court must first try to read sections 440.15(10)(a) and 440.20(15) harmoniously. Id. That can be accomplished by recognizing that our holding in Grice does not apply to situations in which a claimant's ACE exceeds his or her AWW.
Accordingly, we answer the certified question in the negative and hold that when a claimant is receiving SSD benefits in addition to workers' compensation, thus implicating section 440.15(10)(a), an employer/carrier may offset workers' compensation benefits but only to the extent that the claimant's benefits exceed 80 percent of AWW or ACE, whichever is greater. See American Bankers Ins. Co. v. Little, 393 So.2d at 1064. The benefits may not be reduced beyond this amount. This is so even though the claimant may be receiving in excess of 100 percent of AWW at the time of the accident.
The decision of the district court is quashed, and the case is remanded for proceedings consistent with this opinion.
By reason of the holding in this opinion, respondent's cross-petition is moot.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.