PER CURIAM.
In this workers’ compensation case, the Employer/Servieing Agent (E/SA) appeals an order of the Judge of Compensation Claims (JCC) denying an offset asserted by the E/SA against Claimant’s workers’ compensation disability benefits. For the following reasons, we affirm the order on appeal.
Claimant, hired as a Deputy Sheriff in April 2003, suffered a compensable injury on December 3, 2011. He is receiving temporary total disability benefits under section 440.15(2), Florida Statutes (2011). His average weekly wage is $851.27, and thus his compensation rate is $567.54 per week. See § 440.15(2)(a), Fla. Stat. On account of his injury, Claimant is also receiving $1,470.00 per month social security disability benefits, and $2,530.81 per month in-line-of-duty disability benefits from the Florida Retirement System (FRS). The total disability benefits Claimant is receiving from all of the above sources for his compensable injury is $6,441.23 monthly, or $1,497.96 per week ($6,441.23 divided by 4.3 weeks). The weekly amount exceeds his average weekly wage of $851.27 by $646.69.
Because of the overage, the E/SA began taking an offset against Claimant’s workers’ compensation disability benefits on June 28, 2013, purportedly under the authority of Escambia County Sheriffs Department v. Grice, 692 So.2d 896 (Fla.1997), in which the Florida Supreme Court held that “an injured worker, except where expressly given such a right by contract, may not receive benefits from his employer and other collateral sources which, when totaled, exceed 100% of his average weekly wage.” Grice, 692 So.2d at 898. When that occurs, the supreme court held, the employer/carrier is entitled to offset the excess by reducing the workers’ compensation disability benefits accordingly. Id. The so-called “Grice offset” is determined by totaling the disability benefits a claimant receives from all sources (including workers’ compensation), calculating a weekly total, and subtracting 100 percent of the claimant’s average weekly wage. See Miami-Dade County v. Lovett, 888 So.2d 136, 137 (Fla. 1st DCA 2004). Because the offset in the instant case exceeds the amount of workers’ compensation disability benefits the E/SA otherwise would pay, the E/SA paid Claimant the statutory minimum amount of $20 per week. See § 440.12(2), Fla. Stat. (2012) (“Compensation for disability resulting from injuries which occur after December 31, 1974, shall not be less than $20 per week.”). When Claimant challenged the offset, the JCC by summary final order excluded Claimant’s in-line-of-duty disability benefits from the offset calculation because Claimant contributes to the pension fund supplying those benefits. Claimant’s pension plan, the FRS, from which the in-line-of-duty disability benefits are paid, was fully employer funded until July 7, 2011, when, due to statutory changes, FRS members began contributing three percent (3%) of their salaries to fund the plan. See generally *1238 Scott v. Williams, 107 So.3d 379 (Fla.2013).
The JCC relied on City of Hollywood v. Lombardi, 770 So.2d 1196 (Fla.2000), and we affirm on the same authority. In Lombardi, the Florida Supreme Court wrote,
[W]e hold that where the ‘pension plan is funded at least in part with employees’ contributions, decreasing workers’ compensation benefits on account of pension benefits runs afoul of section 440.21, Florida Statutes (1993).’ Thus, once it is determined that the pension plan is funded with employees’ contributions, workers’ compensation benefits are primary and it is the pension fund that is entitled to the benefit of the offset.... Our holding should not be read to mean that in all other cases the workers’ compensation fund automatically receives the benefit of the offset; rather, we hold only that where the fund is employee-contributory, it would violate section 440.21 for workers’ compensation benefits to be reduced.
770 So.2d at 1205 (quoting City of Hollywood v. Lombardi, 738 So.2d 491, 498 (Fla. 1st DCA 1999)). Section 440.21, now as in 1993, invalidates “[a]ny agreement by an employee to pay any portion of premium paid by her or his employer to a carrier or to contribute to a benefit fund or department maintained by the employer for the purpose of providing compensation or medical services and supplies as required by this chapter.” Under the supreme court’s reasoning, offsetting workers’ compensation benefits to account for collateral benefits a claimant receives from an employee-contributory pension plan is tantamount to requiring the claimant “to contribute to a benefit fund ... maintained by the employer for the purpose of providing” workers’ compensation benefits — a circumstance prohibited by section 440.21.
The E/SA argues section 440.21 does not apply to the situation here because the inline-of-duty disability benefit fund — the FRS — is not maintained by the Employer (the county), but by the State. We decline to read such a distinction into the statute, however, because doing so would create disparate results for claimants employed by state government entities and claimants employed by non-state government entities participating in the FRS. See §§ 112.021(10), (11); 112.051, Fla. Stat. (2012).
AFFIRMED.
BENTON, WETHERELL, and MARSTILLER, JJ., concur.